# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46340

| | | |
|---|---|---|
| MARK CICCARELLO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| and | ) | Boise, September 2019 Term |
| | ) | |
| BAUS INVESTMENT GROUP, LLC | ) | Opinion filed: December 23, 2019 |
| | ) | |
| Plaintiff, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY BO DAVIES, and MARCUS, | ) | |
| CHRISTIAN, HARDEE AND DAVIES, LLP | ) | |
| | ) | |
| Defendants-Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LOTUS VAPING TECHNOLOGIES, LLC; | ) | |
| VAPOR INVESTORS, LLC; MIKE | ) | |
| RODGERS, LANCE CHURCHILL, SHAUN | ) | |
| TRACY and ROBERT HENRY, | ) | |
| | ) | |
| Defendants. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Peter G. Barton, District Judge.

The judgment of the district court is affirmed.

Points Law, PLLC, Boise, for Appellant. Michelle Renae Points argued.

Gjording Fouser, PLLC, Boise, for Respondent Marcus, Christian, Hardee, and Davies, LLP. Stephen Lee Adams argued.

Eberle Berlin Turnbow & McKlveen, Boise, for Respondent Jeffrey Bo Davies. Daniel Richard Knowlton argued.

1

BURDICK, Chief Justice.

Mark Ciccarello and Baus Investment Group, LLC, appeal a decision by the district court granting summary judgment in favor of Respondents Jeffrey Bo Davies and Marcus, Christian, Hardee & Davies, LLP ("MCHD"). The district court ruled that Ciccarello's case lacked the requisite expert testimony to establish a genuine issue of material fact as to legal malpractice. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In February 2012, Mark Ciccarello formed a company named F.E.M. Distribution, LLC, ("F.E.M.") for the purpose of marketing and selling a product line called "Lotus Electronic Cigarettes."

In 2013, Ciccarello faced federal criminal charges related to his operation of another business that sold and marketed synthetic cannabinoids. As a result of the federal charges, some of F.E.M.'s assets were seized by the federal government. To prevent further seizure of F.E.M.'s remaining assets, Ciccarello contacted attorney Jeffrey Bo Davies, who had previously represented Ciccarello in various business and personal matters.

Ciccarello and Davies discussed options for safeguarding F.E.M.'s assets, which included the possible sale of F.E.M. to another company. These discussions included several possibilities for structuring the sale, should one occur. A Washington investment group showed interest in F.E.M. and began negotiations with Davies and Ciccarello, but the sale was never completed.

Shortly thereafter, Davies drafted documents to form two new companies, Vapor Investors, LLC ("Vapor"), and Baus Investment Group, LLC ("Baus"), which collectively owned Lotus Vaping Technologies, LLC ("Lotus"). Vapor had a 55% ownership interest in Lotus, and Baus had a 45% ownership interest. Davies put together a group of investors who each held varying percentages of ownership interests in Vapor and Baus. The members of Vapor and Baus orally agreed with Ciccarello that he would receive $2 million and a majority ownership interest in Baus in exchange for the sale of F.E.M.'s assets to Lotus.

Because the other investors were concerned about Ciccarello's pending federal criminal charges, the members agreed that Bob Henry would temporarily hold Ciccarello's shares until the federal charges were resolved. However, everyone understood the shares in Bob Henry's name actually belonged to Ciccarello. F.E.M. was then sold to Lotus for the purchase price of

2

$50,000. Simultaneously, Ciccarello and a representative of Lotus executed an Independent Contractor Agreement ("ICA"), drafted by Davies, that provided for 16 years of $10,000 monthly installment payments (close to $2 million total) to be paid to Ciccarello for his services to Lotus as an independent contractor. This agreement also contained a termination provision allowing Lotus to stop making monthly payments to Ciccarello during any period of incarceration and allowing Lotus to terminate the agreement if certain conditions were met.

Following F.E.M.'s sale to Lotus, Ciccarello continued to act as CEO and manage operations. In January 2014, the federal government issued a letter stating it had no further interest in Ciccarello's involvement in Lotus. Soon thereafter, Ciccarello requested that his shares in Baus be returned and that the sale documents be modified to reflect him as the owner of the Baus shares. However, this was never done. In June 2014, Ciccarello was incarcerated due to his federal criminal case. Lotus ceased making monthly payments to Ciccarello in July 2014 and never resumed payments. At some point in 2014, Ciccarello was also ousted from Lotus by its members and Bob Henry took over his role as CEO.

In April 2016, Ciccarello filed a verified complaint and demand for jury trial against Lotus, Vapor, Davies, Henry, and several other investors involved in the sale of F.E.M. to Lotus. The complaint sought recovery of damages Ciccarello alleged he suffered as a result of the structure of the sale and the conduct of Henry, Davies, and the investors following the sale. In the fall of 2016, Ciccarello moved for—and the district court granted—leave to amend his complaint to add MCHD as a party, as Davies was a partner in that law firm during the period the alleged damages arose. Ciccarello's claims against Davies and MCHD were negligence claims asserting legal malpractice. Ciccarello's claims against Lotus, Vapor, Henry, the other investors, and all other parties except Davies and MCHD were subsequently dismissed with prejudice pursuant to a stipulation for dismissal. Thus, the only remaining claims before the district court were Ciccarello's legal malpractice claims against Davies and MCHD.

On June 19, 2017, all parties stipulated to a scheduling order setting the case for trial on March 26, 2018, requiring that Ciccarello make his expert witness disclosures at least 150 days before trial, and make any additional expert witness disclosures in rebuttal of the defendants' expert disclosures at least 60 days before trial. On October 25, 2017, Ciccarello timely filed his expert witness disclosure, identifying attorney Brian C. Larsen as an expert witness who was expected to testify that: Davies drafted the F.E.M. sales documents in a way that was adverse to

Ciccarello's interests; Davies' representation of Lotus in its purchase of F.E.M. from Ciccarello was a violation of "the applicable standard of care"; proceeding with his representation of Lotus in its purchase of F.E.M. from Ciccarello was also "a breach of the applicable standard of care"; Davies had a duty under Idaho Rule of Professional Conduct 1.9 not to represent Lotus because Ciccarello's interests were adverse to those of Lotus; Davies breached his duty under Idaho Rule of Professional Conduct 1.9 by failing to obtain Ciccarello's consent to represent Lotus in the sale; and, as a result of Davies' breach, Ciccarello suffered $2 million in damages.

Shortly after Ciccarello made his expert witness disclosure, Davies and MCHD moved for summary judgment. Respondents argued that even if Davies represented Ciccarello at the time of the F.E.M. sale, Davies was not negligent in his representation. Each party briefed the motion and Ciccarello also moved for leave to amend his complaint a second time to add a claim for punitive damages.

In its memorandum in support of its motion for summary judgment filed on November 20, 2017, MCHD argued that Ciccarello "ha[d] not proffered competent expert testimony establishing that [Davies] failed to meet the applicable standard of care . . . ." In their reply briefing filed on December 11, 2017, Davies and MCHD further refined their argument regarding the deficiency of Ciccarello's expert witness disclosures, explaining that Ciccarello was required to provide expert affidavits[1] under *Greenfield v. Smith*, 162 Idaho 246, 395 P.3d 1279 (2017) to establish a prima facie case of legal malpractice and survive summary judgment. The district court held a hearing on the motion for summary judgment on December 18, 2017. There, Davies and MCHD argued that Ciccarello's expert witness disclosures were insufficient, and an affidavit previewing the expert's testimony was required. Ciccarello took the position that he did not need an expert affidavit to survive summary judgment and he would have his expert testify at trial. The district court then took the matter under advisement.

On January 24, 2018, Ciccarello filed a declaration of Brian C. Larsen, which he designated as a "rebuttal expert disclosure." The rebuttal expert disclosure explained that, in light of Davies and MCHD's expert disclosures, Brian C. Larsen was further expected to testify that: the Idaho Rules of Professional Conduct provide a standard of care that Davies was required to

---

[1] Witnesses, including experts, may also provide unsworn declarations to satisfy this requirement under Idaho Code section 9-1406 (2019). I.R.C.P. 56(c)(1)(A) also provides that declarations or affidavits may adequately support a party's factual positions at summary judgment.

4

meet; Davies was in an attorney-client relationship with Ciccarello at all relevant periods of time; Davies had a duty to take necessary steps to ensure that the F.E.M. sale documents would be modified at a later time; and the sales documents played no part in asset protection.

The next day, on January 25, 2018, the district court granted Davies' and MCHD's motions for summary judgment. The district court ruled that, under *Greenfield*, expert testimony was required to overcome a motion for summary judgment on the issues of breach and proximate cause in a legal malpractice case. The district court explained that Ciccarello's expert needed to testify that a non-negligent attorney would have been able to negotiate better deal terms that would have resulted in a better outcome to overcome summary judgment on this issue. In light of this ruling, the district court denied Ciccarello's motion to amend his complaint to add punitive damages as moot.

Ciccarello moved for reconsideration of the court's summary-judgment ruling pursuant to Idaho Rule of Civil Procedure 11.2 and filed an additional declaration from his proposed expert in support of that motion. The additional declaration specifically provided that Ciccarello's expert would testify that Ciccarello "would have received better deal terms but for [Davies'] negligence." The district court denied the motion, holding that expert testimony was a necessary part of the prima facie case of legal malpractice and because Ciccarello did not provide sufficient expert testimony at the time of the summary-judgment motion, summary judgment was properly granted.

Then on May 7, 2018, Ciccarello moved for relief from the order granting summary judgment, pursuant to Idaho Rules of Civil Procedure 60(b)(1) and 60(b)(6), arguing mistake and compelling circumstances justifying relief. The district court denied this motion, determining that a final judgment had not yet been entered, and that, in any event, there was no "mistake" of fact suitable for relief under Idaho Rule of Civil Procedure 60(b)(1), nor were there unique and compelling circumstances suitable for relief under Idaho Rule of Civil Procedure 60(b)(6). The district court also ruled that the later declarations of Ciccarello's expert were untimely for consideration at summary judgment. In accord with its prior decisions, the district court entered a final judgment dismissing all of Ciccarello's claims with prejudice on August 31, 2018. Ciccarello timely appealed.

## II.     ISSUES ON APPEAL

A. Whether the District Court erred in granting Respondent's Motion for Summary Judgment by ruling that a plaintiff in an attorney malpractice case is required to file an expert affidavit to overcome a motion for summary judgment.

B. Whether the District Court erred in denying Ciccarello's Motion for Reconsideration.

C. Whether the District Court erred in denying Ciccarello's Rule 60(b) Motion.

## III.     STANDARD OF REVIEW

"In a legal malpractice appeal, the standard of review for this Court when reviewing a district court's grant of summary judgment is well-settled: this Court 'uses the same standard properly employed by the district court originally ruling on the motion.'" *Lanham v. Fleenor*, 164 Idaho 355, 358, 429 P.3d 1231, 1234 (2018) (quoting *Jordan v. Beeks*, 135 Idaho 586, 589, 21 P.3d 908, 911 (2001)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *English v. Taylor*, 160 Idaho 737, 740, 378 P.3d 1036, 1039 (2016) (quoting *Sprinkler Irrigation Co. v. John Deere Ins. Co.*, 139 Idaho 691, 695–96, 85 P.3d 667, 671–72 (2004)). "In order to survive a motion for summary judgment, the non-moving party must 'make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.'" *Jones v. Starnes*, 150 Idaho 257, 259–60, 245 P.3d 1009, 1011–12, (2011) (quoting *Badell v. Beeks,* 115 Idaho 101, 102, 765 P.2d 126, 127 (1988)).

This Court reviews a trial court's decision to grant or deny a motion for reconsideration using the same standard of review as the lower court in ruling on the motion. *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). In other words:

> If the decision was within the trial court's discretion, we apply an abuse of discretion standard. On the other hand, when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment.

*Id.*

This Court reviews a denial of a motion to grant relief under I.R.C.P. 60(b) for an abuse of discretion. *Meyers v. Hansen*, 148 Idaho 283, 287, 221 P.3d 81, 85 (2009).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (emphasis in original).

## IV.     ANALYSIS

### A.  The district court properly granted Respondents' motions for summary judgment.

The district court granted summary judgment in favor of Davies and MCHD because Ciccarello failed to oppose their motions for summary judgment by providing an expert affidavit in support of his legal malpractice claim. The district court granted the motions after determining that the elements of breach and proximate cause had been challenged by Davies' and MCHD's motions for summary judgment, and that these elements "are ones on which expert testimony must be provided," because they were not within the ordinary knowledge and experience of laymen. It was on these elements that the district court found a "gap" in the proposed testimony of Ciccarello's expert. Specifically, the district court ruled that it lacked an expert affidavit explaining what contract terms would have been available to Ciccarello if his attorney had not been negligent, and how a non-negligent attorney would have secured a better outcome.

On appeal, Ciccarello argues that genuine issues of material fact should have precluded summary judgment. Specifically, Ciccarello asserts that there is an issue of material fact regarding whether Davies breached his duty to Ciccarello when he drafted the ICA and F.E.M. sale documents to be terminable and to allow for the cessation of payments to Ciccarello. Ciccarello further argues that because the movants—Davies and MCHD—failed to establish the absence of a question of material fact in their motion, the burden did not shift to him to overcome the motion for summary judgment. Lastly, Ciccarello argues that these issues of material fact are many and obvious, so expert testimony on the issues of duty and breach was not required to survive summary judgment. In response, Davies and MCHD argue that expert testimony on the issues of the applicable standard of care, breach, and damages is a required part

7

of a prima facie case for legal malpractice under *Greenfield v. Smith*, 162 Idaho 246, 395 P.3d 1279 (2017).

> In Idaho, the elements of a legal malpractice claim are:
>
> > (1) the existence of an attorney-client relationship that gives rise to a duty of care on the part of the attorney to the client;
> >
> > (2) an act or omission by the attorney in breach of the duty of care;
> >
> > (3) the breach of the duty was a proximate cause of damage to the client; and
> >
> > (4) the fact and extent of damages alleged.

*Lanham v. Fleenor*, 164 Idaho 355, 359, 429 P.3d 1231, 1235 (2018) (footnotes omitted). Like in many other torts, the burden of proving each element by a preponderance of the evidence is on the plaintiff. *Id.*

To resist a motion for summary judgment in a legal malpractice case, the plaintiff is ordinarily required to provide an expert affidavit explaining how the attorney's conduct fell below the standard of care and how the conduct was the proximate cause of the plaintiff's damages. *Greenfield v. Smith*, 162 Idaho 246, 252, 395 P.3d 1279, 1285 (2017). For example, in *Greenfield*, the plaintiff hired an attorney to represent her in a civil action against her neighbors. *Id.* at 248, 395 P.3d at 1281. Following a breakdown in the attorney-client relationship, which led to the attorney filing a motion to withdraw, Greenfield represented herself at trial and lost. *Id.* at 248–49, 395 P.3d at 1281–82. Greenfield then filed a lawsuit against her former attorney, alleging legal malpractice. *Id.* at 249, 395 P.3d at 1282.

In the legal malpractice action, the defendant-attorney filed a motion for summary judgment, arguing Greenfield had failed to provide any expert witness testimony to show that the attorney's conduct "fell below the standard of care for an attorney or that his performance was the proximate cause of any damages." *Id.* at 251–52, 395 P.3d at 1284–85. "The district court granted [the] motion, finding that [Greenfield] needed to resist the motion for summary judgment with expert affidavits." *Id.* at 252, 395 P.3d at 1285. Affirming the district court's decision, we explained that "[w]hen a defendant-attorney files a motion for summary judgment, the plaintiff ordinarily has an obligation to provide expert affidavits that explain how the lawyer's conduct fell below the standard of care and how the conduct proximately caused damages." *Id.* We reasoned that members of the jury "usually do not have the knowledge or experience necessary to determine the standard of care that applies to an attorney or how the attorney's performance of

8

that duty may or may not harm a client." *Id.* But we recognized one exception for when the attorney's alleged malpractice "is so obvious that it is within the ordinary knowledge and experience of laymen, such as when an attorney allows a statute of limitations to run." *Id.*

In *Greenfield*, the plaintiff did not provide expert testimony to resist the defendant-attorney's summary judgment motion. *Id.* Instead, she filed her own affidavit listing the ways she believed her former attorney had committed malpractice. *Id.* For example, she alleged that the attorney failed to file a motion to compel discovery, failed to finish a deposition, missed a deadline for disclosing an expert witness, failed to file for summary judgment on the neighbors' counterclaims, submitted a draft protection order to the court later than she wanted, failed to complete all discovery under the pre-trial compliance order, failed to adequately prepare for hearings, and failed to pursue motions she requested. *Id.* We determined that none of these alleged deficiencies were as simple or obvious as allowing a statute of limitations to run. *Id.* Accordingly, we found that the exception did not apply, and affirmed the district court's decision because plaintiff's failure to provide an expert affidavit was fatal to her malpractice action. *Id.* at 252–53, 395 P.3d at 1285–86.

Here, Ciccarello did not meet the requirements from *Greenfield* in his legal malpractice action. As we stated in *Greenfield*, when challenged on summary judgment, the plaintiff "has an *obligation* to provide expert affidavits that explain *how* the lawyer's conduct fell below the standard of care and *how* the conduct proximately caused damages." *Id.* at 252, 395 P.3d at 1285 (emphasis added). Davies' and MCHD's motions for summary judgment challenged the sufficiency of evidence as to whether Davies breached the duty he owed to Ciccarello as a result of their attorney-client relationship. These motions triggered Ciccarello's obligation to provide expert affidavits that explain exactly how Davies' conduct fell below the standard of care and how the conduct caused damage. The only document Ciccarello filed concerning his expert witness prior to the summary judgment hearing was an expert witness disclosure. The disclosure identified the expert and his qualifications, listed the documents he viewed to form his opinions, and gave a summary of his proposed opinions. However, it was not an affidavit or declaration. Therefore, Ciccarello's expert witness disclosure was not the sworn testimony required by *Greenfield*.

Having found that Ciccarello failed to resist Davies' and MCHD's motions for summary judgment with an expert affidavit, we look now to whether Davies' alleged malpractice was "so

9

obvious" as to be "within the ordinary knowledge and experience of a laymen." Ciccarello's allegations against Davies are complex. He alleges that a non-negligent attorney would have drafted the ICA differently, and structured the sale in a way that simultaneously protected F.E.M.'s assets from forfeiture and guaranteed that he would receive the $2 million purchase price. Davies structured the sale in a way that required the formation of an additional business and two holding companies, as well as the drafting of a sales agreement and an independent contractor agreement, all allegedly supplemented by an additional oral agreement. An attorney's structuring of this type of complex sale is precisely the type of conduct where expert witness testimony would enable the jury to evaluate Ciccarello's claim. Whether the nuanced choices made by an attorney in structuring such a sale fell below the applicable standard of care is far less obvious to a layperson than the black and white allegation that an attorney allowed a statute of limitations to run.

Therefore, Ciccarello failed to provide evidence sufficient to overcome Davies' and MCHD's motions for summary judgment because he did not provide an expert affidavit to resist the summary judgment motion and his allegations against Davies are not the type that would be within the ordinary knowledge and experience of a layperson.

Ciccarello also argues that the movants—Davies and MCHD—did not meet their burden of establishing the absence of a genuine issue of material fact, so the burden did not shift to him to refute their allegations. This position relies on burden shifting as explained in *Kiebert v. Goss*, 144 Idaho 225, 228, 159 P.3d 862, 865 (2007). There, we explained that "the burden of proving the absence of material facts is upon the moving party[,]" but "[o]nce the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show that a genuine issue of material fact does exist." *Id.* (citations omitted). However, Ciccarello's argument overlooks the well-established requirement that to overcome a motion for summary judgment, a non-moving party has to make a "showing sufficient to establish the existence of an element essential to its case when it bears the burden of proof." *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 88, 996 P.2d 303, 307 (2000). Ciccarello, as the plaintiff, bears the burden of proving the elements of a prima facie case of legal malpractice. Defendants need only to challenge the legal sufficiency of a plaintiff's legal malpractice case to trigger the *Greenfield* requirement that the plaintiff present expert evidence on the challenged elements. That is what was done here. Davies' and MCHD's motions for

summary judgment alleged that Ciccarello provided insufficient evidence to establish a prima facie case of legal malpractice. To overcome summary judgment, under *Greenfield*, Ciccarello needed to present an expert affidavit indicating precisely how Davies' representation fell below the standard of care, and how such breach was the proximate cause of his damages. Ciccarello failed to provide such expert affidavits. Therefore, the district court did not err in granting Davies' and MCHD's motions for summary judgment.

### B. The district court did not err in denying Ciccarello's motion for reconsideration.

Next, Ciccarello argues that his expert's declarations, one filed just prior to the issuance of the court's summary-judgment ruling and the other filed concurrently with his motion for reconsideration, address the "gap" in evidence identified by the district court and should have been considered by the district court on reconsideration. Had it considered them, Ciccarello argues the district court should have granted the motion for reconsideration.

We review a district court's decision on whether to accept an untimely filed affidavit in connection with summary judgment for an abuse of discretion. *Cumis Ins. Society, Inc. v. Massey*, 155 Idaho 942, 946, 318 P.3d 932, 936 (2014) (citing *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 5, 981 P.2d 236, 240 (1999)). The district court stated the following in ruling on the motion to reconsider: "Summary judgment is a time for the final disposition of claims. It is the crucible of claims, to determine if trial is necessary. Upon the evidence submitted on or by December 18, 2017 [the hearing date], over 20 months since the complaint was filed, trial was not necessary." The district court then expanded on its decision when addressing Ciccarello's Rule 60(b) motion:

> Defendants noticed their Second Motion for Summary Judgment for hearing on December 18, 2017. Pursuant to Rule 56(b)(2), Plaintiff's opposition brief and opposing documents had to be served at least 14 days prior to the hearing: December 4, 2017. The [second Ciccarello expert declaration] was filed instead on January 24, 2018, 51 days later. The [third Ciccarello expert declaration] was filed five days after that. Therefore, both were untimely for consideration under Rule 56.
>
> . . .
>
> [T]his Court has discretion whether or not to accept the untimely [second and third expert declarations]. A rule to the contrary, requiring a court to accept facts not filed before summary judgment is heard but more than 50 days late, cuts against the nature of the proceeding, to determine whether the matter should proceed to trial. . . A rule to the contrary . . . also risks

11

incentivizing gaming of summary judgment proceedings by the parties, encouraging them to try to file "just enough" disclosure to beat summary judgment with the knowledge that, if the offered evidence were not enough, they could simply supplement the facts.

As indicated by the district court, because the declarations provided by Ciccarello's experts were untimely for consideration at summary judgment per Idaho Rule Civil Procedure 56(b)(2), it was not required to consider them in ruling on the motion for reconsideration. While this Court has explained that when considering a motion for reconsideration "the trial court should take into account any new facts presented by the moving party that bear on the correctness of the order," *Int'l Real Estate Solutions, Inc., v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014), this rule was not designed to allow parties to bypass timing rules or fail to conduct due diligence prior to a court's ruling. Rather, "[t]he purpose of a motion for reconsideration is to reexamine the correctness of an order." *Id.*

We cannot say that the district court abused its discretion in declining to consider Ciccarello's untimely expert declarations. The district court specifically stated that it had discretion regarding whether to consider the untimely expert declarations. It further explained that Ciccarello's opposition brief and supporting documents, which would include the affidavits required under *Greenfield*, were supposed to be filed at least 14 days before the hearing. Expressing concerns over the length of time it took Ciccarello to file the declarations ("more than 50 days late"), and reasoning that Ciccarello could have filed a motion for an extension of time under Idaho Rule of Civil Procedure 56(d), but chose not to, the district court declined to consider the untimely expert declarations. The district court's choice was not an abuse of discretion. Accordingly, we determine that the district court did not err in denying Ciccarello's motion for reconsideration.

## C. The district court did not err in denying Ciccarello's Rule 60(b) Motion.

In denying Ciccarello's Rule 60(b) motion, the district court concluded that Ciccarello could not be granted relief because a final judgment had not yet been issued in the case. The district court also held that Ciccarello did not show mistakes suitable for relief under Rule 60(b)(1), nor did he show unique and compelling circumstances suitable for relief under Rule 60(b)(6).

This Court reviews a trial court's grant or denial of a Rule 60(b) motion for an abuse of discretion. *Berg v. Kendall*, 147 Idaho 571, 576, 212 P.3d 1001, 1006 (2009). As explained

12

above, we apply the factors from *Lunneborg* when reviewing whether the district court abused its discretion. 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Idaho Rule of Civil Procedure 60(b) provides in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a *final* judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> . . .
>
> (6) any other reason that justifies relief.

I.R.C.P. 60(b) (emphasis added). "Any claim of mistake [under Rule 60(b)(1)] must be a mistake of fact and not a mistake of law." *PHH Mortg. v. Nickerson*, 160 Idaho 388, 397, 374 P.3d 551, 560 (2016) (quoting *Berg v. Kendall,* 147 Idaho 571, 576–77, 212 P.3d 1001, 1006–07 (2009)). Under Rule 60(b)(6), a court may grant relief only "upon a showing of unique and compelling circumstances justifying relief." *In Re SRBA Case No. 39576 Subase No. 37-00864*, 164 Idaho 241, 252, 429 P.3d 129, 140 (2018) (quoting *Miller v. Haller*, 129 Idaho 345, 348, 924 P.2d 607, 610 (1996)). Accordingly, relief under Rule 60(b)(6) is infrequently granted. *Id.* (citing *Berg*, 147 Idaho at 578, 212 P.3d at 1008).

Here, the district court did not abuse its discretion in denying Ciccarello's Rule 60(b) motion. The "mistakes" Ciccarello alleges in support of his motion for relief were that he should have asked for an extension of time to file an expert affidavit and that he "was mistaken in proceeding with his Motion for Reconsideration." Ciccarello also alleged that the district court made mistakes by not taking his additional expert declarations into consideration when ruling on his motion for reconsideration and by not "substantively consider[ing] or rul[ing] on" his motion to reconsider. As the district court pointed out, the "mistakes" alleged by Ciccarello were not factual in nature. All four were legal mistakes, two allegedly made by Ciccarello, and two allegedly made by the district court. Therefore, Ciccarello alleged no mistake of fact upon which the district court could have granted relief under Rule 60(b)(1). Furthermore, failure to provide sufficient evidence establishing a prima facie case for legal malpractice is not the type of "unique and compelling circumstances" that justify relief under Rule 60(b)(6). As such, the district court did not abuse its discretion by denying Ciccarello's motion for relief under Rule 60(b).

**D. Attorney fees.**

Each party requests attorney fees on appeal pursuant to Idaho Code section 12-120(3), which permits an award of attorney fees to the prevailing party in a civil action regarding "any commercial transaction." A "commercial transaction" means "all transactions except transactions for personal or household purposes." I.C. § 12-120(3). "Under this statute, when a commercial transaction comprises the gravamen of a lawsuit, the prevailing party shall be awarded attorney fees." *Kugler v. Nelson*, 160 Idaho 408, 416, 374 P.3d 571, 579 (2016) (citing *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 141, 357 P.3d 863, 866 (2015)). Whether a commercial transaction comprises the gravamen of a lawsuit is an inquiry made on a claim-by-claim basis. *Sims v. Jacobson*, 157 Idaho 980, 984–85, 342 P.3d 907, 912–13 (2015) (citing *Willie v. Bd. of Trs.*, 138 Idaho 131, 136, 59 P.3d 302, 307 (2002)).

"Legal malpractice actions are an amalgam of tort and contract theories." *Bishop v. Owens*, 152 Idaho 616, 620, 272 P.3d 1247, 1251 (2012) (citation and quotation marks omitted). Idaho Code section 12-120(3) "does not require that there be a contract between the parties before the statute is applied; the statute only requires that there be a commercial transaction." *Soignier v. Fletcher*, 151 Idaho 322, 326, 256 P.3d 730, 734 (2011) (citing *City of McCall v. Buxton,* 146 Idaho 656, 665, 201 P.3d 629, 638 (2009)). Therefore, a party to a legal malpractice action may be awarded attorney fees under Idaho Code section 12-120(3) "where the claim 'would not have arisen absent the claimed commercial transaction.'" *Simono v. House*, 160 Idaho 788, 793, 379 P.3d 1058, 1063 (2016) (quoting *H–D Transport v. Pogue*, 160 Idaho 428, 436, 374 P.3d 591, 599 (2016)).

The facts underlying this case involve the sale of a company, the formation of two other companies, and the transfer of shares between owners and operators of a company. Ciccarello specifically alleges that Davies drafted the documents used to complete the sale of F.E.M., including the ICA, the main point of contention between the parties. These facts constitute several commercial transactions. Ciccarello's malpractice claim against Davies and MCHD arises solely out of those transactions. If they were absent, his claim would not exist. Because we affirm the district court's order granting summary judgment in favor of Respondents Davies and MCHD, they are the prevailing parties in this appeal. Therefore, we award attorney fees on appeal to Respondents Davies and MCHD.

14

## V. CONCLUSION

The district court did not err in granting summary judgment in favor of Davies and MCHD, denying Ciccarello's motion for reconsideration, or denying Ciccarello's motion for relief under Idaho Rule of Civil Procedure 60(b). Accordingly, the district court's final judgment dismissing Ciccarello's claims with prejudice is affirmed. Attorney fees and costs on appeal are awarded to Respondents.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR.**